1  J. MICHAEL KALER, SBN 158296
2  9930 Mesa Rim Road, Suite 200
   San Diego, California 92121
3  Telephone (858) 362-3151

4
   MELODY A. KRAMER, SBN 169984
5  9930 Mesa Rim Road, Suite 1600
   San Diego, California 92121
6  Telephone (858) 362-3150
7
   Attorneys for Plaintiff JENS ERIK SORENSEN,
8  as Trustee of SORENSEN RESEARCH AND
   DEVELOPMENT TRUST
9

10                    UNITED STATES DISTRICT COURT

11               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13 | JENS ERIK SORENSEN, as Trustee of  ) Case No. 08 CV 233 BTM CAB
   | SORENSEN RESEARCH AND               )
14 | DEVELOPMENT TRUST,                  ) **DECLARATION OF MELODY A.**
   |                                      ) **KRAMER OPPOSITION TO**
15 |                 Plaintiff,           ) **DEFENDANTS' MOTION TO STAY**
16 |    v.                                ) **PENDING OUTCOME OF**
   |                                      ) **REEXAMINATION PROCEEDINGS**
17 |                                      )
18 | GLOBAL MACHINERY COMPANY,            ) Date: April 25, 2008
   | an Australian company; GMCA PTY.     ) Time: 11:00 a.m.
19 | LTD., an Australian company;         ) Courtroom 15 – 5th Floor
20 | TRAPONE CORPORATION PTY.             ) The Hon. Barry T. Moskowitz
   | LTD., an Australian company; and DOES)
21 | 1 – 100,                             ) *NO ORAL ARGUMENT*
22 |                                      ) *UNLESS REQUESTED BY THE COURT*
   |                 Defendants.          )
23 |                                      )
24 |                                      )
25 |                                      )
   |                                      )
26 |_____)

27
28

I, MELODY A. KRAMER, declare:

1. I am not a party to the present action. I am over the age of eighteen. I have personal knowledge of the facts contained within the following paragraphs, and could and would competently testify thereto if called as a witness in a court of law.

2. At all times relevant herein I have been an attorney for Sorensen Research and Development Trust ("SRDT"), Plaintiff in the above-captioned matter.

3. This declaration is made in support of Plaintiff's Opposition to Defendant's Motion to Stay.

4. Patent infringement defendant Black & Decker filed an Ex Parte Request for Reexamination of the subject '184 patent in July 2007 ("1st reexamination") and, on that basis, obtained an order staying the related case, *Sorensen v. Black & Decker Corporation, et al*, Case No. 06cv1572 ("Black & Decker Order"). Now, nine months later, the first office action for the 1st reexamination has not yet issued, even though Plaintiff declined to file the optional patent owner's statement in order to shave approximately two months from the process.

5. Co-defendants in the Black & Decker case - Phillips Plastics and Hi-Tech Plastics – waited until December 21, 2007 to file a second third-party reexamination request ("2nd reexamination"), which the USPTO has just recently accepted.

6. Recently, I have accessed and analyzed annual of reports and conducted a closer analysis of USPTO data show that the current, average timeframe for conclusion of a reexamination is approximately five years, extending longer if an appeal to the Federal Circuit is sought. That closer analysis shows that the 18-23 month period most recently cited by Defendants and the PTO as typical for reexamination completion is an average of all reexaminations filed in the 28 years since 1981. When one eliminates the older data and conducts the analysis only on reexamination filings in more recent years, it becomes apparent that the phenomenal

growth in reexamination filings since 2002 vastly exceeds the PTO's current pace for processing reexaminations. As a natural consequence, the backlog of pending reexaminations has grown to approximately a five-year supply and application growth continues to outpace all efforts by the PTO to accommodate the increased workload. This data leads to the conclusion that the current, average timeframe for completion of a reexamination filed after 2006 is approximately five years and continuing to grow. The details of my analysis are as follows.

7. USPTO Annual Reports contain statistics on the number of *ex parte* reexamination filings, the number of those that are known to be related to litigation, the number of *ex parte* reexaminations granted, and the total number of certificates issued. The official website contains annual reports back to 1993 which contain this statistical data back to 1989. Because each report includes data for a five-year period of time, attached hereto are true and correct copies of only the relevant portions of the reports for 2007, 2002, 1998, and 1993. These are attached herein as Exhibit A.

8. I imported the statistics noted above into an Excel spreadsheet and then made observations and calculations of that data. The Excel spreadsheet is attached hereto as Exhibit B, followed by a Growth of Reexamination Backlog Graph prepared from that data. By comparing the incoming reexamination filings vs. the outgoing certificates, a pattern of dramatically increasing backlog appears. Assuming a zero carryover from 1988 into the 1989 figures for which records are available, the backload of ex parte reexaminations has increased 100-fold from 1989 to the end of 2007 (from 16 to an estimated 1,658).

9. If the USPTO were able to keep issuing certificates at its 2007 level of 367 (the highest reported number in a single year) and not have any new filings, it would still take approximately 4.5 years for the USPTO to erase the backload of *ex parte* reexaminations (1,658 ÷ 367).

     10.    If the rate of certificate issuances were 250, the average for the past five years ((193+138+223+329+367)/5), it would take 6.6 years to erase the backlog (1,658 ÷ 250).

     11.    The filing of reexaminations has become an effective weapon to slow down or stop patent infringement plaintiffs. This is not only demonstrated by numerous articles recommending this strategy to infringement defendants (see Exhibit D for example), but it is also demonstrated by the USPTO's own information.

     12.    *Ex parte* reexamination requests known to be related to litigation have soared from a mere 9% in 1990 to 57% for 2007. See Exhibit B.

     13.    The PTO was already commenting on problems keeping pace with these increased litigation related filings in 2004, even though the estimated backlog was still less than 800 at the end of 2003. In early 2005, the USPTO issued a "Notice of Changes in Requirement" document (attached hereto as Exhibit C), which contains the following statement in the Background section:

> It has been the Office's experience, however, that both patent owners and third party requesters have used a second or subsequent reexamination request . . . to prolong the reexamination proceeding, and in some instances, to turn it essentially into an <u>inter partes</u> proceeding. These actions by patent owners and third party requesters have resulted in multiple reexaminations taking years to conclude, thus making it extremely difficult for the Office to conclude reexamination proceedings with "special dispatch" as required by statute (35 U.S.C. 305 for <u>ex parte</u> reexamination, 35 U.S.C. 314 <u>inter partes</u> reexamination).

     14.    In late 2006, this Court adopted and implemented a set of Patent Local Rules with the stated purpose of providing a predictable and uniform treatment for IP litigants and streamline the process by which a patent case is litigated, shortening the time to trial or settlement and thereby reducing costs for all parties involved. The new rules set up a schedule where a claim construction hearing would be held

approximately nine months after the complaint is filed, and trials set at approximately 18 months after complaints are filed.

15. Attached hereto as <u>Exhibit E</u> is a true and correct copy of an article entitled "New local rules pave way to speedier patent trials" from the San Diego Daily Transcript dated June 12, 2007. In it (at the 7th paragraph) Judge Dana M. Sabraw, who chaired the committee that established the new patent local rules, is quoted as saying: "A majority of the judges of the Southern District are firmly committed to holding claim construction hearings within nine months for the filing of the complaint, and to setting a trial date within 18 months of that filing."

16. The closer look at PTO data that is explained herein was prompted by information obtained directly from or related to counsel for the Black & Decker defendants. The February 2008 issue of the San Diego Intellectual Property Lawyers Association ("SDIPLA") contained a reference to a newsletter from Hal Wegner, partner at Foley & Lardner, the law firm representing Black & Decker case defendants Phillips Plastics and Hi-Tech Plastics. The reference states as follows:

> The 1/5/08 email states that today the average ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years.

17. The fact of lengthy reexaminations is also well known to the Niro Scavone firm that represents Black & Decker. The oft-reported U.S. Patent No. 5,253,341 "JPEG patent," owned by a client of Niro Scavone, emerged from a seven-year reexamination just days prior to the filing of Black & Decker's reexamination request of the '184 patent. It appears that a new reexamination has just been allowed of that same JPEG patent. A true and correct copy of Niro Scavone's brief on the issue is attached hereto as Exhibit F.

DATED this Thursday, April 10, 2008.

                /s/ Melody A. Kramer
                Melody A. Kramer, Esq.